UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARL DOUGLAS JOHNSON,

        Plaintiff,                                  Hon. Richard Alan Enslen

v.                                          Case No. 4:06-CV-137

CORRECTIONAL MEDICAL
SERVICES, et al.,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Plaintiff's Motion for Injunctive Relief, (dkt. #14), and

Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, (dkt. #51).  Pursuant

to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motions both be **denied**.

        On November 13, 2006, Plaintiff initiated the present action alleging that Defendants

have denied him appropriate medical care in violation of the Eighth Amendment to the United States

Constitution.  (Dkt. #1).  Plaintiff also asserts that Defendants have denied him due process and illegally

conspired to violate his rights.  *Id.*  Plaintiff filed the present motions seeking an injunction ordering

Defendants to appropriately treat his medical condition.

        To obtain injunctive relief, Plaintiff must first show that he "is being threatened by some

injury for which he has no adequate legal remedy." *Dana Corp. v. Celotex Asbestos Settlement Trust*,

251 F.3d 1107, 1118 (6th Cir. 2001) (citations omitted); *see also*, *Wilson v. Wilkinson*, 2002 WL 123580

at *1 (6th Cir., Jan. 28, 2002) (applying this standard to the evaluation of a motion for temporary

restraining order).  If such is the case, the court must then examine several factors: (1) whether the movant is likely to prevail on the merits, (2) whether the movant would suffer irreparable injury if the court does not grant the injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether a preliminary injunction would be in the public interest.  *See Samuel v. Herrick Memorial Hospital*, 201 F.3d 830, 833 (6th Cir. 2000) (citations omitted).

Rather than prerequisites which must each be satisfied, the relevant factors, none of which are alone determinative of the matter, are competing considerations to be weighed and balanced.  *See Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 400 (6th Cir. 1997); *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 828, 831 (W.D.Mich. 1998). Ultimately, the decision whether to grant injunctive relief lies within the court's discretion.  *See Dana Corp.*, 251 F.3d at 1118 (the "most significant single component" in the decision whether to grant injunctive relief "is the court's discretion") (citations omitted).

Plaintiff has been incarcerated in the Michigan Department of Corrections (MDOC) since June 2005.  Plaintiff asserts that he has Human Herpes Virus Six Variant -A (HHV6A).  Plaintiff reports that as a result of HHV6A he "can barely function, [is] in excru[c]iatingly unbearable agony near death/incapacitatious [sic]."  Plaintiff alleges that Defendants have denied him medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).  Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate

indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendants "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).  However, when an inmate claims that his requests for medical treatment were delayed (rather than denied), the objective component of the analysis focuses on the effect of the alleged delay in treatment.  *See Napier*, 238 F.3d at 742.

However, the Eighth Amendment is not a vehicle by which to constitutionalize state tort law.  To the extent, therefore, that Plaintiff merely disagrees with Defendants' treatment decisions or claims that such constitute malpractice, Plaintiff fails to state a claim of constitutional magnitude.  *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim

-3-

is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability – even if the harm ultimately was not averted). The materials thus far submitted in this case reveal that Plaintiff is not being denied treatment, but instead that he simply disagrees with the treatment decisions of his care providers.

As previously observed, Plaintiff began serving his present term of incarceration in June 2005. On July 8, 2005, Plaintiff was examined by Dr. Terry Matthews. (Dkt. #1, Appendix at 49a). Plaintiff reported that he had been experiencing "extreme fatigue" for three years and that prior to his incarceration he had been treated with an "experimental" medication (Valcyte). The doctor informed Plaintiff that he would recommend that he be examined by an infectious disease specialist. *Id.*

On July 13, 2005, Plaintiff reported to a member of the nursing staff that he was "dying." (Dkt. #1, Appendix at 50a). Plaintiff further complained that he had "waited long enough for [an] ID [infectious disease] consult." Plaintiff also informed the nurse that because "Dr. Hutchinson may not be aware of current therapies," he possessed "a couple of tidbits of information." The nurse's treatment notes reveal no indication that Plaintiff was experiencing any physical distress. *Id.*

On July 25, 2005, Plaintiff was again examined by a member of the nursing staff. (Dkt. #1, Appendix at 51a). Plaintiff reported that his condition was "killing" him. He accused his care providers of giving him the "run around." The nurse informed Plaintiff that the request to have him examined by an infectious disease specialist had been approved. Plaintiff was also cautioned about his "demanding" demeanor. *Id.*

On July 26, 2005, Plaintiff was examined by Dr. Matthews. (Dkt. #1, Appendix at 52a). Plaintiff reported that he was experiencing a sore throat. The results of a physical examination were unremarkable. Plaintiff was assured that he was scheduled to be examined by an infectious disease specialist "soon." *Id.*

On July 27, 2005, Plaintiff was again examined by Dr. Matthews. (Dkt. #1, Appendix at 53a). Plaintiff requested that he be treated with Acyclovir. The doctor informed Plaintiff that HHV6A "is relatively insensitive to" this medication and, furthermore, that he "cannot order a medication that [he] and others generally believe to be ineffective for your condition." *Id.*

On July 29, 2005, Plaintiff was examined by infectious disease specialist Dr. Varsha Moudgal. (Dkt. #1, Appendix at 55-56a). Plaintiff reported that he "feels deathly ill part of the time and even worse the rest of the time." The doctor reported, however, that Plaintiff was experiencing "no significant distress" and that the results of a examination were unremarkable. Plaintiff was diagnosed with chronic fatigue syndrome and increased blood pressure. Dr. Moudgal also recommended that Plaintiff receive psychiatric treatment. The doctor further reported that

> I have discussed this case in great detail with Dr. Hutchinson in terms of treatment for chronic fatigue syndrome. Dr. Hutchinson plans to discuss the patient's case with Dr. Martin Learner [who treated Plaintiff prior to his incarceration] who was following the patient as an outpatient in terms of new and experimental treatment, and will discuss the case with the regional medical counsel as well and make a decision regarding treatment of this patient with either Valcyte or Acyclovir and follow-up with the patient.

*Id.*

On August 9, 2005, Plaintiff was examined by a member of the nursing staff. (Dkt. #1, Appendix at 58a). Plaintiff requested "immediate treatment with Acyclovir." Plaintiff also requested that medical personnel have "no contact with Dr. Learner regarding his medical treatment." The nurse

informed Plaintiff that his care providers were "researching [his] disease, and the treatment options of the disease." *Id.*

On August 12, 2005, Plaintiff was examined by a member of the nursing staff. (Dkt. #1, Appendix at 114a). Plaintiff reported that he felt "good." Plaintiff requested that he be provided with Valcyte and Acyclovir. Plaintiff again instructed the nurse that he did not want "anyone" to speak with Dr. Learner. Plaintiff was informed that this refusal "impedes MDOC's ability to change care." Nonetheless, Plaintiff refused to permit his care providers to speak with Dr. Learner. *Id.*

On November 8, 2005, Dr. George Kuzma provided Plaintiff with a "special accommodation" which provided that he was unable to engage in any "prolonged standing." (Dkt. #1, Appendix at 70a).

The results of "lab work" performed on May 11, 2007, revealed only that Plaintiff was suffering from "mild anemia." (Dkt. #51, Exhibit B).

Defendant Dr. Craig Hutchinson, an infectious disease specialist, has submitted an affidavit in opposition to Plaintiff's motions. (Dkt. #57, Exhibit A). Dr. Hutchinson asserts that HHV6A "infects over 90% of all people during childhood" and remains dormant "[t]he majority of the time." The doctor asserts that there exists "no known medical treatment that can eradicate the virus once a person is infected."

Dr. Hutchinson asserts that Plaintiff is immunocompetent.[1] The doctor asserts that there exists "no peer-reviewed published medical literature that supports a position that in immunocompetent persons, HHV6A causes any of Mr. Johnson's alleged or documented medical conditions." Dr.

---

[1] Immunocompetency refers to the ability to develop an immune response and recognize and respond to antigens. It represents the opposite of immunodeficient. *See* Immunocompetent, available at http://www.medterms.com/script/main/art.asp?articlekey=3934 (last visited on August 19, 2007).

Hutchinson notes that while HHV6A has been reported to cause "inflammation of the liver, lymph nodes, and brain," Plaintiff "has no signs or symptoms of any of these medical conditions." According to Dr. Hutchinson, the results of laboratory tests reveal that Plaintiff suffers from "no significant abnormality, with the exception of a recent iron deficiency which is unrelated to his HHV-6A, and which is currently being appropriately evaluated and treated."

With respect to Plaintiff's request to be treated with Valcyte, Dr. Hutchinson states that Plaintiff "does not have any medical condition for which a prescription for [Valcyte] would be considered effective." The doctor further states that there exists no evidence "establishing indefinite medical treatment with [Valcyte] as an effective preventative medical treatment for anything in immunocompetent patients like Mr. Johnson." Dr. Hutchinson concludes that

> [P]resently there is no scientific evidence that Mr. Johnson has any serious medical illness or condition caused by HHV-6A, and/or that indefinite use of [Valcyte] is an effective preventive medical treatment against such potential illness in the future. While Mr. Johnson is requesting a specific course of medical treatment for his HHV-6A, the physicians responsible for his medical care have no evidence on which to prescribe the treatment requested, or to request that the MDOC provide the treatment.

*Id.*

Plaintiff has submitted no evidence refuting Dr. Hutchinson's assertions. Aside from the medical evidence detailed above, Plaintiff has not submitted any evidence regarding his medical condition or treatment therefor. Furthermore, as the Court previously recognized, Plaintiff has thus far failed to execute the necessary releases to permit Defendants to access his medical records. (Dkt. #62). Thus, Defendants' ability to defend against Plaintiff's claims is severely hampered. This difficulty notwithstanding, the record thus far submitted contains no evidence that Defendants have denied Plaintiff necessary or appropriate medical care or otherwise exhibited deliberate indifference to

Plaintiff's serious medical needs.  The evidence thus far submitted reveals instead that Plaintiff simply disagrees with the treatment decisions of his care providers.

The Court is not unsympathetic to Plaintiff's condition and his belief that he is not receiving the appropriate treatment for such.  As discussed above, however, Plaintiff is not being denied medical treatment.  Instead, Plaintiff simply disagrees with the medical assessment and decisions of his care providers.  Such does not implicate the United States Constitution, but rather sounds in state tort law.  In sum, Plaintiff has failed to demonstrate that he is likely to prevail on the merits of his claims.  Again, while the Court is not unsympathetic to Plaintiff's plight, Plaintiff has presented no *evidence* that he will suffer irreparable harm in the absence of injunctive relief.  Furthermore, the Court finds that the public interest would not be served by attempting to micro-manage Plaintiff's medical care.  Accordingly, Plaintiff is not entitled to the relief sought.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Plaintiff's motions for injunctive relief be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  August 6, 2007                    /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge