UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CARL DOUGLAS JOHNSON,

        Plaintiff,           Case No. 4:06-cv-137

v.                          Honorable Richard Alan Enslen

CORRECTIONAL MEDICAL
SERVICES, INC. et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On March 5, 2007, this Court ordered service of Plaintiff's complaint on Defendants. On May 2, 2007, Defendants Howes, Winchester, Pandya, Michigan Department of Corrections (MDOC), Caruso, Pramstaller and Lange ("the MDOC Defendants") filed a motion to dismiss (docket #35) on the ground that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). Shortly thereafter, on May 4, 2007, Defendants Correctional Medical Services (CMS), Hutchinson and Kuzma ("the CMS Defendants") filed a motion to dismiss (docket #38) on the ground of exhaustion.[1] Plaintiff filed a response (docket #41) on or about May 23, 2007. Because Defendants submitted documents in support of their motions to dismiss, the Court issued an order on December 18, 2007, converting Defendants' motions to dismiss into motions for

---

[1] Doctor Varsha Moudgal also is named as a Defendant in this action. Dr. Moudgal has not been served in this case and is not a party to either of the motions for summary judgment presently pending before the Court.

summary judgment brought pursuant to FED. R. CIV. P. 56 and providing the parties with an opportunity to provide any additional evidence in support of their motion or response.

Upon review, I recommend that the MDOC Defendants' motion for summary judgment (docket #35) be denied. I further recommend that the CMS Defendants' motion for summary judgment (docket #38) be granted in part as to Defendants Hutchinson and Kuzma and denied as to Defendant CMS.

**Facts**

Plaintiff presently is incarcerated at the Carson City Correctional Facility, but the events giving rise to his complaint occurred while he was incarcerated at the Lakeland Correctional Facility (LFC). In his *pro se* complaint, Plaintiff sues the MDOC; MDOC Director Patricia Caruso; MDOC Region II Medical Director (Unknown) Pandya; MDOC Health Care Services Acting Chief George Pramstaller; CMS; Doctors Craig Hutchinson, George Kuzma, and Varsha Moudgal; LCF Warden Carol Howes; LCF Health Unit Manager Nancy Lange; and LCF Grievance Coordinator Steven Winchester. Plaintiff asserts that Defendants conspired to violate his Eighth Amendment rights by failing to provide him proper medical treatment and violated his Fourteenth Amendment rights by restricting his use of the MDOC grievance process.

Plaintiff alleges that he is infected with Human Herpes Virus Six Variant A (HHV6A-variant). HHV6A-variant is a viral infection much akin to AIDS, yet more lethal to organs and tissue scarring. (Compl., ¶ 19.) Plaintiff claims that he took the anti-viral drug "Valcyte" for his HHV6A-variant from 2004 to June 2005. (Compl., ¶ 21.) After his incarceration began in June 2005, the Defendants switched Plaintiff to the anti-viral drug "Acyclovir," but discontinued the drug two months later because it was not an appropriate treatment for Plaintiff's condition. (Compl., ¶

27.) When Plaintiff asked to be put back on Valcyte, and even offered to have his family pay for the drug, Defendants rejected the request. (Compl., ¶¶ 28, 31.) Plaintiff has developed viral Encephalitis, a seizure disorder and multiple other associated disorders and conditions. Plaintiff claims that he "has suffered and will continue to suffer immediate and irreparable injury in the form of continued scarring and deterioration of his bodily organs which will result in eventual death . . . . (Compl., ¶ 60.)

For relief, Plaintiff seeks an injunction requiring Defendants to provide immediate evaluation, testing, relief, and treatment to Plaintiff for his HHV6A-variant, including treatment supervision by an outside party; punitive damages totaling $500,000; compensatory damages of $425,000 from each Defendant; coverage of all future medical expenses for ailments including but not limited to scarring of the liver and/or other internal organs.

## Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable

inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant or an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Discussion**

I.    Applicable Law

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). Additionally, a plaintiff must fully exhaust his administrative remedies before filing a complaint. *See Freeman*, 196 F.3d at 645. Further, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (emphasis added). Thus, in order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922 (2007); *Woodford*, 126 S. Ct. at 2386. "Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 127 S. Ct. at 922.

II.    MDOC Grievance Policy

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[2], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control

---

[2] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

*Id.* at ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

The Grievance Policy requires prisoners to file grievances in a responsible manner. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ G. A grievance will be rejected if it contains profanity, threats of physical harm, language that is demeaning to any person, etc. *Id.* A grievance also may be rejected on grounds that it is vague, illegible, contains multiple unrelated issues, raises issues that are duplicative of those raised in another grievance filed by the grievant or is filed in an untimely manner, unless there is a valid reason for the delay. *Id.* at ¶ G(1), (4).

### III.  **Grievances**

Plaintiff filed two grievances regarding his medical treatment. The first grievance was filed on August 25, 2005. (*See* Grievance No. LCF-2005-08-0776-12D, Pltf.'s Ex. 82a, Docket #1-5). The grievance stated:

> On 8/12/05 L.C.F. HUM Lange told me that the MDOC/CMS would not treat my HHV6A infection. That as of 8/01/05 I would be discontinuing treatment for the Parvo B19 and HSV. So now I am receiving no treatment.
>
> I would like information on [the person] who discontinued this treatment, and how this determination was made. Due to the fact that there are test results that say I have HHV6Parvo B19 and HSV and is [sic] not being treated. This information should be provided to me in writing.

On September 1, 2005, Plaintiff sent a kite to Defendant Grievance Coordinator Winchester asking that he disregard the grievance because Plaintiff planned to submit a new grievance that was more specific. (Def.'s Ex. 1, Docket #36-2.) Winchester sent Plaintiff the following response:

> Mr. Johnson, the Step I grievance has already been sent out for investigation and response. If, during the interview process of your grievance, you are satisfied with the proposed response, you may sign off on your grievance at that time.
>
> If you have additional information that is relevant to your complaint, you may provide that information to the Step I respondent of your grievance.

> Requesting to disregard this grievance, so that you may write another one on the same issue is not allowed, as it would fall [sic] the policy criteria of being "Duplicative."
>
> If you are not satisfied with the Step I Response to your grievance, then you may go to the next level of the prison grievance process.
>
> You [sic] request for this Step I Grievance to be disregarded will not be honored.

(Def.'s Ex. 2, Docket #36-2). On September 9, 2005, the Step I Respondent denied Plaintiff's grievance, stating "Health Services at LCF has been in contact with Region II Medical Office, Chief Medical Officer of Correctional Medical Services and the Infectious Disease specialist. It is their opinion that the medication (Acyclovir) the grievant is requesting is not appropriate." (Pltf.'s Ex. 117a, Docket #1-6.) Plaintiff did not appeal the decision to Steps II and III.

Plaintiff filed his second grievance on December 22, 2005. (*See* Grievance No. LCF-2005-12-1179-28A, Pltf.' Ex. 12, Docket #1-3.) The grievance stated:

> Repeatedly refused viral suppressive treatment by the Correctional Medical Services of Michigan/Michigan Department of Corrections for my Human Herpes Virus Six A Variant infection (HHV6-A) Viral Infection.
>
> Request of appropriate permanent ciral [sic] suppressive treatment for HHV-6A.
>
> *** I'm in excruciatingly unbearable agony - immediately provide me, and I'll gladly sign all the required authorizations for C.M.S./M.D.O.C. to access/confirm/validate all of the documents/record in this grievance.

(*Id.*) As Defendant Winchester had warned, Plaintiff's grievance was rejected at Step I as being duplicative of Grievance No. LCF-2005-08-0776-12D. His grievance also was rejected as duplicative at Steps II and III. The Step III Grievance stated in its entirety:

> The Grievant presents an issue which alleges in December 2005 and before, he was refused medication for his medical condition. Grievant request[ed] specific treatment for his medical condition as relief for filing this grievance. This grievance was rejected at the local level in accordance with the provisions of Policy Directive and Operation Procedure 03.02.130 (Prisoner/Parole Grievances).
> This investigator reviewed the record presented with the appeal to step three. All relevant information was considered. Based on the review, this writer finds staff

>   properly responded to the grievance and addressed the merits of the main issue grieved. This grievance was noted as duplicative to grievance LCF-05-08-776-12d1. The step I and II responses are upheld at this level. This grievance appeal is denied.

(Pltf.'s Ex. 72a, Docket #1-5.)

### IV. **Analysis**

The MDOC and CMS Defendants claim that Plaintiff failed to properly exhaust the claim set forth in Grievance No. LCF-2005-08-0776-12D because he did not appeal the denial of his grievance to Steps II and III as required by the Grievance Policy. In his response to Defendants' motions, Plaintiff claims that when he received the Step I response, he immediately sent a kite to Defendant Winchester requesting a Step II/III appeal form, but never received it. Plaintiff further claims that he sent a kite to Warden Howes requesting the Step II/III appeal form, but did not receive a response. Defendants do not respond to Plaintiff's claim that he requested, but did not receive, the Step II/III appeal form. If Defendant Winchester failed to provide Plaintiff with the necessary appeal form, the Step II and III appeals were not "available" to him. In light of the evidence presented to the Court, a genuine issue of material fact exists as to whether the Step II and III appeals were available to Plaintiff.

With regard to Plaintiff's second grievance, No. LCF-2005-12-1179-28A, the MDOC and CMS Defendants argue that Plaintiff failed to properly exhaust because his grievance was rejected under the Grievance Policy as being duplicative of Grievance No. LCF-2005-08-0776-12D. The Grivance Policy provides that a grievance may be rejected if it raises issues that are duplicative of those raised in another grievance filed by the grievant. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, at ¶ G(1). Plaintiff argues that his second grievance was not duplicative because his first grievance "was CLEARLY NOT a request for medication/treatment and is/was MERELY a

statement of facts that my treatment, (which was Acyclovir) has been discontinued, that I no longer [sic] receiving treatment and a request that who discontinued my treatment and why be provided to me in writing." (Response at 2, docket #41.)  While both of Plaintiff's grievances concern his medical treatment, I agree that the second grievance was not properly rejected as duplicative. Plaintiff's first grievance requested an explanation for the decision to discontinue Acyclovir, which was construed narrowly by Defendants as concerning only Plaintiff's treatment with that specific drug.  In his second grievance, Plaintiff complained more broadly about the ongoing lack of medical treatment for his condition.  Even if Plaintiff's second grievance was duplicative, I concluded above that Defendants failed to meet their burden of proof with regard to the medical claim set forth in Grievance No. LCF-2005-08-0776-12D.  Thus, the Court cannot find that Plaintiff failed to properly exhaust his medical claim.

The CMS Defendants also argue that Plaintiff's grievances failed to exhaust his claims against Defendants Hutchinson and Kuzma because they were not named in the grievance. The Grievance Policy requires: "Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T. By failing to name Defendants Hutchinson and Kuzma in his grievances, Plaintiff failed to properly exhaust his claims against them.  Accordingly, summary judgment should be granted in favor of Defendants Hutchinson and Kuzma.

### **Recommended Disposition**

For the foregoing reasons, I recommend that the MDOC Defendants' motion for summary judgment (docket #35) be denied.  I further recommend that the CMS Defendants' motion for summary judgment (docket #38) be granted in part as to Defendants Hutchinson and Kuzma and

denied as to Defendant CMS.  Plaintiff's claims against Defendants Hutchinson and Kuzma should be dismissed without prejudice for failure to exhaust his administrative remedies.


Date:  March 3, 2008                                             /s/ Ellen S. Carmody
                                                                 ELLEN S. CARMODY
                                                                 United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).